**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE**

| | | |
|---|---|---|
| **DAVID L. HOLT,** | ) | |
| Petitioner, | ) | |
| | ) | **No. 2:05-CR-47** |
| | ) | **No. 2:07-CV-192** |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent. | | |

## MEMORANDUM OPINION

David L. Holt ("petitioner" or "Holt"), a federal prisoner, has filed this "Motion Under 28 USC § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 47]. The United States has responded in opposition, [Doc. 80], and Holt has replied to the government's response, [Doc. 85]. The matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be DENIED.

## I.    Procedural and Factual Background

Holt was indicted on May 10, 2005, in a one count indictment which charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), [Doc. 1]. The

charge arose out of a traffic stop of an automobile driven by Holt's wife on March 29, 2005. Holt was a back seat passenger of the vehicle, where a .22 caliber pistol was located after Holt was removed from the vehicle. Holt made an initial appearance before the United States Magistrate Judge on June 9, 2005, and the Federal Defender Services was appointed to represent him. No pretrial motions were filed; however, on July 15, 2005, counsel moved for an extension of the plea bargain deadline, [Doc. 12], on the basis that counsel had just learned of a videotape of the traffic stop and needed additional time to review the videotape and discuss its ramifications with Holt.

On July 21, 2005, a plea agreement, [Doc. 14], and an agreed factual basis, [Doc. 15], were filed. The agreed factual basis, signed by Holt, stated:

> The United States of America, by its counsel, Robert M. Reeves, Assistant United States Attorney for the Eastern District of Tennessee, defendant, David Lawrence Holt, and his attorney Nikki Pierce, hereby stipulate that the following facts are true and accurate:

> On March 29, 2005, a State Trooper, David Osborne, stopped a car with no registration in Bristol, Sullivan County, Tennessee. Inside the car were the driver, a front seat passenger, and lying in the back seat was David Holt. The driver gave verbal consent to search the car. When Trooper Osborne had everyone get out of the car, he saw a pistol in the seat where David Holt was lying. After Trooper Osborne determined that Holt had three previous felony convictions, David Holt was placed under arrest.

> The firearm was determined to be manufactured outside the state of Tennessee and therefore affected interstate commerce.

On August 22, 2005, Holt pled guilty to the indictment. A Presentence Investigation Report

2

("PSR") was ordered and disclosed to the parties on October 7, 2005. The PSR determined that Holt was an armed career criminal subject to the mandatory minimum term of imprisonment of fifteen years provided for in 18 U.S.C. § 924(e).

Then, on November 4, 2005, counsel for Holt filed a motion to withdraw from further representation of Holt, [Doc. 22]. A hearing on the motion was conducted by the Magistrate Judge on November 15, 2005. On November 16, 2005, the Magistrate Judge granted the motion and substitute counsel was appointed, [Doc. 25]. On November 30, 2005, Holt filed a motion to withdraw his guilty plea, [Doc. 27]. He claimed that he had made an "uninformed decision" to plead guilty and would not have done so but for "inaccurate information about the evidence against him" given to him by an investigator employed by his former attorney. A hearing on the motion to withdraw the guilty plea was held on January 6, 2006.

Holt testified at the hearing that he had quit school in the seventh grade with "about a third grade education" and that he could read and write very little.[1] On March 29, 2005, according to Holt, while "pretty well lit," he was involved in a four wheeler accident in which he injured his left leg. Because of the injury, he called his wife to pick him up and "that is how [he] ended up in the back seat" of the vehicle. Holt testified that the car driven by his wife was stopped twice on their way home–first by a local officer who told his wife

---

[1]  While Holt testified at the January 6 hearing that he could not "read worth a hoot" and could only write his name and spell small words, he testified at the change of plea hearing that he had a "seventh grade education" and could "read and write without difficulty." He testified that he had "been able to read and understand all the pleadings that were filed in this case." [*See* Doc. 28, Tr. of Proc., p. 3].

3

that her tags were expired and then a little later by Trooper Osborne, again because of the expired tags. According to Holt, who by his own account was "nodding in and out," the Trooper asked Mrs. Holt to get out of the car and asked for consent to search. Holt did not hear his wife's response. The trooper walked a drug sniffing dog around the car and "he hit on it."

Holt, who was sitting up in the back seat, was asked to get out of the car and both Holt and his wife were placed in the back of the Trooper's car. After the Trooper got the passenger out of the vehicle, the vehicle was searched and a firearm found in the automobile. Holt was then arrested. Mrs. Holt testified that the firearm in the vehicle was not hers and she did not know it was in the car. She also testified that two days before the traffic stop she had gone to a flea market with her daughter- in-law, Christy Lynch, who told her she had purchased a firearm at the flea market. Mrs. Holt's daughter-in-law provided her with a written and signed statement that the gun found in the vehicle on March 29 was her gun and that she had left it in the car after purchasing it at the flea market. Mrs. Holt provided the statement of Lynch to Brian Hackett, an investigator with Federal Defender Services.

Mrs. Holt testified that she talked with petitioner on the day after he signed his plea agreement[2] and told petitioner that Lynch had provided the written statement that the firearm was hers. Mrs. Holt later that same day read Lynch's statement to the petitioner. Holt testified that he had originally been told by Hackett that the statement provided by Lynch

_____

[2] Holt signed his plea agreement on July 20, 2005, a full month before he entered his guilty plea. He entered his guilty plea a full month <u>after</u> Mrs. Holt read Lynch's statement to him.

4

said the gun was a .25 caliber automatic with a clip on the bottom. According to Holt, after he learned from his wife that Lynch's statement did not indicate that the gun was a .25 caliber, petitioner confronted his counsel and Hackett about the discrepancy. Hackett testified at the hearing that he did not recall ever telling petitioner that the firearm was a .25 caliber firearm and that he had no recollection of Lynch ever having told him that. Hackett also testified that both he and counsel advised the petitioner that the caliber of the firearm was immaterial to the charge against him and that the only issue was whether or not petitioner had possessed the firearm. Holt testified, upon questioning by the Court, that his previous statements in response to the Court at the time of his change of plea were false and emphatically stated "the gun ain't mine."

At the time Holt was arrested on the federal indictment in this case, he was at a motel room where he was found to be in possession of crack cocaine. After petitioner had signed his plea agreement, but before petitioner entered his guilty plea, he was interviewed by ATF Agent Gregory Moore and admitted to Moore that he knew the firearm was in the automobile on March 29.

Holt's former attorney, Nikki Pierce ("Pierce"), testified at the January 6 hearing[3] about the steps taken by her office to investigate the case and the efforts she personally made to explain the charge, any defenses and the terms of the plea agreement to Holt. During the course of her representation of Holt, Pierce had been informed that petitioner faced potential

---

[3] Holt waived his attorney client privilege and requested that both Hackett and Pierce testify at the hearing on the motion to withdraw his guilty plea.

state or federal drug charges in Virginia arising out of his possession of crack cocaine at the time of his arrest. If charged federally in Virginia, Holt would have faced a very lengthy sentence because he was a career offender under the federal Sentencing Guidelines and a sentence in that case would have been ordered to run consecutively to the sentence in this case. These considerations played a major role in Pierce's discussions with the petitioner in that, by his plea agreement in this case, he could avoid the Virginia drug charges and might merit a downward departure motion from the guidelines range and any statutory mandatory minimum sentence if he agreed to cooperate with the government.

Pierce also related her discussions with petitioner about the elements of the offense charged in this case and her explanation to petitioner that ownership of the firearm was not an element of the crime charged. Pierce explained to petitioner that the only question was his possession of the firearm and she explained to him the difference between constructive and actual possession. Pierce testified that, to the best of her knowledge, there was never a discussion with petitioner about a specific reference to the caliber of the weapon found in the search of the automobile.

Pierce also testified that she requested an extension of the plea bargain deadline in the case to permit her to review the videotape of the traffic stop with the petitioner. According to Pierce, she met with petitioner several times to watch the videotape and, after a review of the videotape recording of the traffic stop, Holt agreed to plead guilty and entered into the Plea Agreement and Agreed Factual Basis referenced above.

By order dated January 13, 2006, the Court denied petitioner's motion to withdraw

his guilty plea, [Doc. 35], and this decision was ultimately upheld on direct appeal.

The probation officer in the PSR found that petitioner was an armed career criminal pursuant to U.S.S.G. § 4B1.4 based upon his three prior felony burglary convictions, resulting in a base offense level of 33. After a three level reduction for acceptance of responsibility, petitioner's total offense level was 30 and, with a criminal history category of IV, petitioner's advisory guidelines range for imprisonment was 135 to 168 months. However, pursuant to 18 U.S.C. § 924(e), Holt was subject to a statutory mandatory minimum sentence of 15 years. Petitioner made several objections to the PSR, most of which had no potential impact on his sentence. His primary objection to the PSR was his classification as an armed career criminal. He argued that his prior convictions were part of a "single criminal episode" and that he therefore did not have the requisite three prior convictions necessary for armed career criminal classification. By written order, this Court overruled petitioner's objection based on his armed career criminal classification, [Doc. 45]. At sentencing, Holt was sentenced to the statutory mandatory minimum sentence of 180 months. This ruling too was affirmed by the Sixth Circuit Court of Appeals on direct appeal.

Holt timely filed this § 2255 petition on August 13, 2007, less than one month after his conviction and sentence were affirmed by the Sixth Circuit. The petitioner filed a motion to amend his § 2255 petition on July 22, 2009, [Doc. 75], and his motion was granted by order entered on August 3, 2009, [Doc. 78].

7

## II.    Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also*

8

*United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from

> a breakdown in the adversary process that renders the result
> unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving

ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d

1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate

measure of attorney performance is "reasonableness under prevailing professional norms."

*Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of

counsel must "identify the acts or omissions of counsel that are alleged not to have been the

result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective

reasonableness of counsel's performance must be made "from counsel's perspective at the

time of the alleged error and in light of all the circumstances, and the standard of review is

highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's

deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The

petitioner must show "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland*

Court emphasized both prongs must be established in order to meet the claimant's burden,

and if either prong is not satisfied the claim must be rejected, stating:

10

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III.    Analysis and Discussion

The petitioner raises two general grounds for relief in his § 2255 motion and a third ground in his amended petition.  He alleges:

I.    The movant was denied effective assistance of Plea counsel in violation of the Sixth Amendment of the United States Constitution where defense counsel possessed unrefutable evidence (a video-tape) that shows that the evidence (a handgun) that was being used against the movant was obtained in violation of the Fourth Amendment of the United States Constitution and therefore, inadmissible.  However, defense counsel failed to file a motion to suppress the illegally obtained evidence that would have resulted in dismissal of the charge, and instead, informed the movant that he must plead guilty.

II.    Appointed counsel William L. Ricker provided Constitutionally inadequate representation where counsel 1) Failed to subpeona [sic] key defense witnesses Christy Lynch and Trooper David Osborne, whose testimony would have exonerated the movant from the charged offense and  2) Failed to raise ineffective assistance of plea counsel at the  motions hearing held on January 6, 2006 and on direct appeal, for her failure to file a motion to suppress the illegally obtained evidence (a hand gun) based on unrefutable video-tape evidence,

11

instead of instructing the movant to plea guilty.

In his motion to amend his § 2255 petition, [Doc. 75], Holt sought to amend his petition "for the purpose to include case law" and cites *Arizona v. Gant*, 556 U.S. _ _, 129 S. Ct. 1710 (2009) and *United States v. Lopez*, 567 F.3d 755 (6th Cir. 2009). The court interprets this as an argument that the search of the Holt vehicle on March 29 violated the Fourth Amendment and could not be justified as a search incident to Holt's arrest. Because the search in this case was not incident to Holt's arrest, *Arizona v. Gant* and *United States v. Lopez* have no application to this case and the issue raised in the amended petition will not be further discussed.

A.      Ineffective Assistance of Counsel–Failure to File Motion to Suppress

Petitioner's first ground for relief is his claim that his attorney was constitutionally ineffective for failing to file a motion to suppress the firearm found in the automobile driven by petitioner's wife on March 29, 2005. More specifically, the petitioner argues that Trooper Osborne had "no reasonable suspicion" to suspect illegal activity when he made the traffic stop on March 29; that Trooper Osborne "nevertheless . . . walked a police dog around the vehicle;" that no consent was given to search the vehicle; and that the videotape of the traffic stop "clearly shows that Trooper Osborne did not find the hand gun in the back seat of the vehicle as the government claimed," but rather "the gun appears to have been found by Trooper Osborne in the front passenger area" of the automobile. Petitioner relies on the videotape as evidence that he "would have prevailed on a motion to suppress."

12

It is axiomatic that a law enforcement officer may stop a vehicle upon reasonable and articulable suspicion that its occupants are involved in past or present unlawful activity. *Terry v. Ohio*, 392 U.S.1 (1968); *United States v. Roberts*, 986 F.2d 1026, 1030 (6th Cir.), *cert. denied*, 510 U.S. 900 (1993). Since the automobile Holt was traveling in had "no registration" by his own admission, it is very difficult to understand his argument that Trooper Osborne had no basis to make the traffic stop. Reasonable suspicion of an ongoing misdemeanor traffic offense is adequate justification for the traffic stop, *United States v. Simpson*, 520 F.3d 531 (6th Cir. 2008); *Weaver v. Shaloan*, 340 F.3d 398, 407-08 (6th Cir. 2003), and Holt's claim lacks merit.

Holt's further claims under ground one, with one exception, relate to the search of the automobile Holt was a passenger in on March 29. Generally, Holt argues that no consent was given by either him or Mrs. Holt for the search of the automobile and no probable cause existed to justify the search. Because Trooper Osborne had probable cause to search the automobile, as discussed below, he did not need the consent of either Holt or his wife to search. Even if this were not the case, however, Holt is now bound by his prior stipulation that Mrs. Holt consented to the search of the automobile. A search conducted pursuant to a valid consent is, of course, a well recognized exception to the Fourth Amendment requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1993). Although Holt now claims that no consent was given by his wife and that the videotape of the traffic stop supports his

13

assertion[4], the record flatly contradicts Holt's claim.

Holt's Plea Agreement and Agreed Factual Basis were signed by him on July 20, 2005, and filed with the Court on July 21, 2005. In the Agreed Factual Basis, petitioner specifically admitted that he was a passenger in the automobile stopped by Trooper Osborne on March 29 and that "[t]he driver gave verbal consent to search the car." The Plea Agreement and Agreed Factual Basis were signed _after_ Holt had reviewed the videotape of the traffic stop with his attorney several times. Furthermore, when Holt entered his guilty plea on August 22, 2005, a full month after he signed the agreed factual basis, Holt acknowledged under oath that he had read and agreed with the Agreed Factual Basis. He specifically testified that "everything" contained in the document was in fact true. He is now bound by those admissions. Where the court follows the requirements of Rule 11, as it did here, "the defendant is bound by his statements in response to the court's inquiry." _Baker v. United States_, 781 F.2d 85, 90 (6th Cir. 1986) (quoting _Moore v. Estelle_, 526 F.2d 690, 696-97 (5th Cir. 1976)). To allow petitioner to assert otherwise on collateral review would make every plea subject to attack and render oral responses given in court meaningless. _Warner v. United States_, 975 F.2d 1207, 1212 (6th Cir. 1992).

The same is true of petitioner's claim that the videotape of the traffic stop "clearly

---

[4] This Court has once again reviewed the videotape of Trooper Osborne's traffic stop on March 29. While the videotape does not clearly confirm Mrs. Holt's consent to search, it does not confirm Holt's claim either.

14

shows that Trooper Osborne did not find the hand gun in the backseat of the vehicle . . ."[5]

The Agreed Factual Basis states that "[Trooper Osborne] saw a pistol in the [back] seat where David Holt was lying." Holt then acknowledged the truth of that statement under oath at his change of plea hearing. He is now likewise bound by his prior statement concerning the location of the firearm. It is well settled that collateral relief is not available based upon mere allegations that contradict statements the petitioner made before the Court under oath in Rule 11 proceedings. *See Blackledge v. Allison*, 431 U.S. 63 (1977). A defendant is bound by admissions made at a change of plea hearing, even in the face of some evidence contradicting those statements. To do otherwise would condone the practice of defendants providing untruthful responses to questions during plea colloquies. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.), *cert. denied* 528 U.S. 847 (1999).

Holt also argues that Trooper Osborne had no right to walk his drug sniffing canine around the Holt vehicle on March 29. Holt offers no legal support for his contention and none exists. Holt does not argue that Trooper Osborne detained the automobile and its occupants longer than was reasonably necessary; he instead argues once again that the videotaped evidence shows that the dog "did not hit on anything."[6] Even if Holt were correct, this is also irrelevant because the Trooper already had probable cause to search the

---

[5] Once again, the Court's review of the videotape does not confirm Holt's assertion. The videotape clearly shows Trooper Osborne leaning into the Holt automobile from the front passenger side when he announces the discovery of the firearm from where Holt had been lying.

[6] Here too Holt's reliance on the videotape is misplaced. The videotape clearly shows the canine alerting on the right front area of the automobile.

15

automobile based on the odor of marijuana he detected when he first approached the automobile. Given that probable cause already existed, it is unclear why the canine was even employed, unless it was to confirm what the officer already had sufficient reason to believe. In any event, the failure of the dog to alert would not negate or destroy the probable cause that already existed. *See United States v. Davis*, 430 F.3d 345 (6ᵗʰ Cir. 2005).

The more fundamental reason why Holt's argument fails, however, is that he completely overlooks the fact that probable cause for the search of the automobile after the legal traffic stop is clearly established in the record. Trooper Osborne's "affidavit of complaint" states that "[a]s I talked to Mrs. Holt I noticed an odor of burnt marijuana coming from inside the car."[7] In *United States v. Garza*, 10 F.3d 1241 (6ᵗʰ Cir. 1993), the Sixth Circuit held that the smell of marijuana "constituted probable cause to believe that there was marijuana in the vehicle." *Id.* at 1246. The Sixth Circuit has since clarified that the smell of marijuana alone will constitute probable cause to search the interior of an automobile. *See United States v. Crumb*, 287 Fed. App'x. 511, 514, 2008 WL 2906770 (6ᵗʰ Cir. 2008). Referring to its decision in *Garza*, the Sixth Circuit stated:

> . . . we have followed *Garza* consistently in holding that the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle. *See United States v. Puckett*, 422 F.3d 340, 343 (6ᵗʰ Cir. 2005) (upholding the denial of a motion to suppress where police "smelled and saw in open view the marijuana in the seat" and

---

[7] Holt was initially charged in Tennessee state court for unlawful possession of a handgun. An affidavit of complaint is the way a criminal prosecution is initiated under Tennessee law. Tenn. R. Crim. P. 4. The affidavit was filed as an exhibit at the January 6, 2006 hearing on Holt's motion to withdraw his guilty plea.

16

"[t]herefore, there was probable cause to search the car at that point.") *Foster,* 376 F.3d at 588 (holding that "when the officers detected the smell of marijuana coming from Foster's vehicle, this provided them with probable cause to search the vehicle without a search warrant" which "therefore turned a lawful *Terry* stop into a lawful search"); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) (observing that "[t]his court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search" and noting that "[t]he same may be true when marijuana is smelled within a home").

*Id*. at 514.

Failure to file a motion to suppress may be ineffective assistance of counsel.

*Kimmelman v. Morrison,* 477 U.S. 365 (1986). The Sixth Circuit has noted:

> [W]here a suppression motion would be successful, an attorney is guilty of ineffective assistance if he does not file the motion on time . . . . conversely, if such a motion would fail, counsel may not be criticized for having accurately assessed his client's chances of successfully challenging the warrant . . . . thus, whether trial counsel . . . acted incompetently in not filing a timely motion to suppress depends upon the merits of the search and seizure question.

*Worthingon v. United States*, 726 F.2d 1089, 1093-94 (6th Cir. 1984) (Contie, concurring).

The facts in this case, however, fail to establish any deficient performance on the part of the counsel in failing to file a motion to suppress. After discovering the existence of the videotape of the traffic stop, counsel sought an extension of the plea agreement deadline "to review the videotape with Mr. Holt and discuss with him the ramifications the videotape will have on his decision to plea or go to trial." [*See* Doc. 12]. The proof at the hearing on Holt's motion to withdraw his guilty plea established that counsel did just that before Holt signed

17

his plea agreement, and that she negotiated a favorable, reasonable plea agreement which also allowed petitioner to avoid prosecution on federal drug charges in Virginia which could have resulted in a consecutive sentence for him.[8]  As this Court previously found, petitioner, after viewing the videotape with his attorney, "either knew he was guilty, or was so convinced that the weight of the evidence would likely result in a verdict of guilty, that he determined that it was in his best interest to enter a plea of guilty." [Doc. 35, p. 7].  Counsel for petitioner clearly and "accurately assessed" petitioner's chances of succeeding on a motion to suppress and reasonably recommended that petitioner enter into the plea agreement and plead guilty.  Since the motion to suppress had no chance of being successful, counsel's performance cannot be said to be deficient.  Finally, although petitioner claims that his attorney should personally have investigated the case rather than relying on an investigator to do so, he makes no showing of deficient performance on the part of counsel (and indeed there is none) and he can show no prejudice even if he could show deficient performance.

**B.      Ineffective Assistance of Counsel at Hearing on Motion to Withdraw Guilty Plea**

As set forth above, petitioner's counsel's motion to withdraw was granted after the entry of his guilty plea and substitute counsel was appointed to represent Holt.[9]  Substitute

---

[8]  The Sixth Circuit, in its order affirming Holt's conviction and sentence on direct appeal, expressly found that "[t]he circumstances of Holt's guilty plea included a thorough investigation by the defense, a negotiation of an advantageous plea agreement limiting his sentencing exposure, a one-month period to reflect between the signing of the plea agreement and the entry of the plea at the plea hearing, and a defense witness's unwillingness to testify on his behalf."  *United States v. Holt*, No. 06-5281 (6th Cir. July 16, 2007).

[9]  Holt complains, for the first time in his reply brief, that he was not allowed to speak at the hearing on counsel's motion to withdraw and argues that "his voice should have been heard."  A review of the transcript of the hearing, however, shows that both counsel and the Court were reasonably

counsel promptly filed a motion on Holt's behalf seeking to withdraw his guilty plea. Petitioner now asserts that his substitute counsel was ineffective for: 1) failing to argue that his prior counsel had been ineffective for failing to challenge the March 29 traffic stop and subsequent search of the automobile; 2) failing to subpoena a key witness for the hearing on the motion to withdraw guilty plea; and 3) failing to subpoena Trooper Osborne to contest his claim that Holt's wife consented to the search of the automobile, that the dog sniffing canine hit on the car, and that he found the firearm in the backseat of the automobile.

These issues lack merit and require little discussion. First, petitioner's counsel was not deficient in his performance at the hearing on petitioner's motion to withdraw his guilty plea by not arguing that prior counsel had been ineffective for the simple reason that prior counsel had not been ineffective, for the reasons set forth above. Secondly, the handwritten statement of Holt's "key witness," who was unwilling to appear and testify at his hearing, and the affidavit of Trooper Osborne were introduced at the hearing, and Holt offers nothing to indicate that their testimony would have been any different from their statements, or would have had any impact on the outcome of the case.

In her handwritten statement, Christy Lynch, Holt's daughter-in-law, claimed ownership of the .22 caliber Derringer found where Holt had been lying in the automobile. According to Lynch's statement, she had purchased the firearm "the day before when [she]

---

concerned that Holt would say something at the hearing to further incriminate himself–thus, the Court's instructions to Holt not to say anything. This argument lacks merit. *See* Doc. 85-1,pp. 7-8.

and [her] mother-in-law was at the flea market."[10]  She further claimed that it was left in the car by mistake and that Holt did not "know that it was in the car."  Holt makes much of the fact that he was allegedly told by the investigator for the Federal Defender Services that Lynch had claimed to have purchased a .25 caliber pistol and, had he known that, he would not have entered a guilty plea.  As the Sixth Circuit found, however, both ownership and caliber of the firearm were immaterial to Holt's conviction.  Furthermore, Holt admitted that Trooper Osborne found the pistol "in the seat where Holt was lying," and Lynch's testimony that Holt did not know it was there would not have been admissible.  This claim lacks merit.

As set forth above, the affidavit of Trooper Osborne, sworn to before a "judge/clerk/judicial commission," was introduced at the hearing.  The affidavit states:

> As I was traveling South on US 421 near SR 44 I noticed a 1987 white Ford Thunderbird that had a registration that expired on January 31, 2005.  I stopped the vehicle to find the driver to be Carolyn Sue Holt.  I noticed a male I later found to be David Holt laying in the rear seat.  As I talked to Mrs. Holt I noticed a odor of burnt marijuana coming from inside the car along with another strange odor.  Mrs. Holt gave verbal consent to search her car and my K-9 partner Coco alerted to the car on the left and right door area.  Upon having Mr. Holt exit the car I noticed what appeared to be a pistol under his left leg at which he was laying on.  I put him in the rear of Trooper Taylors patrol car to conduct a search.  I found one crack pipe in a black purse that the front right seat passenger stated Mr. Holt threw up to her.  Due to conflicting statements I could not prove who the crack pipe belonged to.  There was marijuana residue in the car along

---

[10]  Mrs. Holt's testimony at the hearing on the motion to withdraw Holt's guilty plea contradicted this.  Mrs. Holt testified that she and Lynch had been to the flea market "two days before," [Doc. 44, p. 4] and had difficulty describing the location of the flea market.  During the same hearing, Mrs. Holt testified that Lynch had purchased the firearm on Saturday, prior to the Tuesday, March 29 traffic stop.

20

with steel wire throughout the floorboard.  Mrs. Holt stated that her husband last smoked crack yesterday 28 of March and the front seat passenger stated Mr. Holt had smoked it earlier today. Mr. Holt stated he last smoked crack last week and that he didn't know the pistol was under his leg that it belonged to his son. The pistol was a two shot .22 long rifle (Deringer type pistol). Mr. Holt had a very strong odor of an alcoholic beverage about his person and seemed to be intoxicated by his actions. According to THP dispatch David Holt has three felony convictions on his record.

Holt argues that Osborne should have been subpoenaed to testify to challenge his affidavit with respect to consent to search, that the dog "hit on the automobile and that he found the firearm in the backseat."  Holt asserts that the videotape of the traffic stop clearly establishes that Trooper Osborne made false statements in his affidavit about these matters.[11] Importantly, Holt does not challenge Trooper Osborne's affidavit concerning the smell of marijuana inside the car, which, as set forth above, established probable cause for the search of the automobile.  Thus, whether consent was given or whether the drug dog hit on the automobile were immaterial.  Furthermore, the Court's review of the videotape simply establishes that the videotape is inconclusive on the consent issue, does not establish that the firearm was found anywhere other than where Trooper Osborne stated, and flatly contradicts Holt's assertion with respect to the "hit" of the drug dog.  Holt cannot establish deficient performance on the part of his attorney nor can he show any prejudice from the alleged deficiency.  This claim lacks merit as well.

_____

[11]    Holt asserts, in his reply brief, that these perceived false statements in the affidavit entitle him to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).  *Franks* deals with false statements or omissions in a search warrant affidavit, not an arrest warrant.

21

**IV.    Issues Raised For First Time In Reply**

Holt raises several issues in this § 2255 proceeding for the first time in his reply to the government's response, [Doc. 85].  Despite the fact that these claims are likely barred by the statute of limitations, the Court will address them briefly on the merits, because they lack merit on their face.

**A.    Constructive Possession**

Holt claims that his attorney "failed to challenge the government's indictment pertinent part [sic], 'did knowingly possess in commerce and affecting commerce a firearm.' This as we well know, speaks of actual possession.  However, constructive possession indictment was not filed, the indictment itself is amiss**.**  The failed investigation and proper scrutiny of the case by counsel . . . forfeited the adversary process." [Doc. 85, p. 8]. Although very difficult to understand, the Court interprets Holt's argument to be that counsel should have challenged the validity of the indictment  in his case because it did not specifically charge him with "constructive" possession of the firearm, rather than "actual" possession.

To sustain a conviction under 18 U.S.C.  § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm specified in the indictment; and (3) that the firearm traveled in or affected interstate commerce.  *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).  A conviction may be based on actual <u>or</u> constructive possession.

"Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* (internal quotation marks omitted) (quoting *U.S. v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). The defendant cites no authority for his novel argument that the indictment in his case was somehow defective for failing to specifically allege "constructive" possession. No such authority exists as far as this Court can tell and petitioner's argument is patently frivolous. The indictment charged all three elements of the offense and evidence of either actual or constructive possession was sufficient to sustain the defendant's conviction.

### B.    Reduction In Sentence In Exchange For Guilty Plea

Holt also now appears to claim that he was informed by his attorney prior to his guilty plea "that his sentence will be cut in half if he cooperated and plead guilty," citing his testimony at the hearing on his motion to withdraw his guilty plea. At that hearing, Holt claimed that his attorney told him that if he did not sign the Plea Agreement he would get "fifteen years; but if you sign it, you cooperate, you'll probably get half of this . . . [T]his is what I'm going to get; that's what I assumed anyway." [Doc. 44, p. 35]. The record, however, flatly contradicts Holt's claim.

In his written Plea Agreement, Holt acknowledged that the Court could "impose any lawful term of imprisonment up to the statutory maximum." [Doc. 14, Plea Agreement, ¶¶ 2(a),(5)]. He further acknowledged that he was subject to a statutory term of imprisonment

of a mandatory minimum fifteen years up to life imprisonment, *Id*. at ¶ 3(b), [Doc. 28, Tr. of Proc., pp. 10-11], "that his sentence would be determined within the discretion of the Court" and that "the sentencing determination [would] be based upon the entire scope of defendant's criminal conduct, defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553," [Doc. 14, Plea Agreement, ¶ 5]. Most importantly, the defendant stood silently by while the following exchange took place between the Court and counsel:

> THE COURT: Ms. Pierce, have you made any recommendations [sic] to the defendant as to what sentence I might impose in this case other than to discuss with him the possible applicability to his case of the mandatory minimum sentence provided by statute and to give him an estimate of his advisory guideline sentencing range?
>
> MS. PIERCE: No, your Honor.

[Doc. 28, Tr. of Proc., Aug. 22, 2005, p. 14].

Although petitioner later argued otherwise, this Court was convinced at the time Holt entered his guilty plea, as it is now, that Holt fully understood the terms of his Plea Agreement and that he was pleading guilty knowingly and voluntarily and because he was in fact guilty of the charged offense. His claim that he received assurance from his attorney that his sentence would be cut in half is contradicted by the record and provides no basis for relief.

## V.     Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing

were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000). *Id.*

Under *Slack*, to warrant a grant of a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE